IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EDWARD RUTHVEN JONES, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. RDB 05-855 |
| ALBERTO GONZALES, UNITED STATES ATTORNEY GENERAL | * | |
| | * | |
| and | | |
| | * | |
| RICHARD CATERISANO, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, | * | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Pending before this Court is the Motion to Dismiss for Lack of Jurisdiction or for Summary Judgment filed by counsel for Alberto Gonzales, Unites States Attorney General and Richard Caterisano, United States Citizenship and Immigration Services ("USCIS") (collectively "Defendants"). On March 30, 2005, Edward Jones ("Jones") filed a Complaint entitled "Plaintiff's Emergency Original Complaint for Writ in the Nature of Mandamus and Request for Declaratory Judgment". Jones is a lawful permanent resident who became subject to removal proceedings after he sought reentry to the country shortly after September 11, 2001.

Essentially, Jones faces a conundrum that gives rise to the filing of this action. The pending removal proceeding before an immigration judge has precluded a complete consideration of his eligibility for naturalization by USCIS. The removal proceeding, however,

cannot be terminated by the immigration judge to enable full consideration of his naturalization

application without USCIS making what has been referred to in that parties' submissions as a

"*prima facie*" determination of Jones' eligibility for naturalization.  Jones' Complaint seeks the

following relief from this Court: (1) an order requiring Defendants to make an affirmative

communication on Jones' *prima facie* eligibility for naturalization; (2) an order entering a

declaratory judgment that Jones is *prima facie* eligible for naturalization, but for the pendency of

the removal proceedings; (3) an award for Jones' reasonable attorney's fees; and (4) any other

relief at law and in equity as justice may require.

Defendants argue that this Court does not have subject matter jurisdiction to issue an

advisory opinion finding that Jones is *prima facie* eligible for naturalization.  Additionally,

Defendants contend that Jones' request for a mandamus is now moot, following USCIS's June 9,

2005 declaration that he is not *prima facie* eligible for U.S. citizenship based on an application

filed with USCIS.  It does not appear that Jones was interviewed or that any type of hearing was

conducted in relation to this denial.  On these grounds, Defendants move to dismiss Jones'

Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  In

the alternative, Defendants move for summary judgment.  The issues have been briefed and no

hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated below,

Defendants' Motion to Dismiss for Lack of Jurisdiction or for Summary Judgment is DENIED.

I.     Background

From this Court's review of the parties' submissions, including the administrative record,

it is evident that this case has a protracted procedural history.  The following facts are viewing in

the light most favorable to the non-moving party.  Jones was placed in removal proceedings in

2001, based on his 1981 convictions for "Crimes Involving Moral Turpitude." (Administrative Record ("AR") 636-9, 670-2).

Jones is a native of Trinidad and Tobago and has been a lawful permanent resident of the United States since 1969. (AR 817-24). In October of 1981, Jones was convicted of first degree rape, second degree assault, and fourth degree criminal possession of a weapon. (AR 674-83). Jones served six years in prison for his convictions and was released in 1987.

After Jones' release, he established himself as a contributing member of the community, firmly rooted in the United States. He met his U.S. citizen wife, Patricia, in 1989, and they married in 1994. There is no evidence of any estrangement in their marriage. Patricia relies on Plaintiff's health insurance to treat her Fibromyalgia and Gastritis, both incredibly painful conditions, and Jones pays most of the family's major bills. (Compl. 10). Jones often helps out with cooking and cleaning when his wife is unable to do so. (Compl. 10). In addition to the emotion loss were her husband deported, having to pay her expenses without his income and health insurance would mean "financial devastation" for Patricia and her family. (AR 18).

Jones is also a father to several U.S. citizen children. His wife and he merged their two families when they married and later gave birth to a daughter, Candace. Jones and his wife live in Lanham, Maryland, along with Patricia's oldest daughter, Cherice, Jones' oldest son, Edward, and Candace, all U.S. citizens. Jones has a son from a previous marriage, Jelani, also a U.S. citizen, for whom he provides health insurance and child support. (Compl. 9). Jones has helped to raise Cherice since she was ten years-old, for the last sixteen years. He ensured that Cherice would get the best education by moving the family close to a preferred school and encouraged her to live at home while she attended college. (Compl. 11). Cherice would lose the only father

3

figure she has known since the age of ten if Jones is deported. (Compl. 11). Jelani suffers from Attention Deficit Disorder and relies on his father's financial and emotional support for treatment. (Compl. 9, 12). Jelani will suffer medically, psychologically, and financially if Jones is deported. (Compl. 12). At ten years old, Candace has never spent any significant time away from her father, and without his support, she would be emotionally damaged and financially unable to continue in her French immersion magnet school. (Compl. 13). Plaintiff's oldest son, Edward, is currently unable to support himself and relies on Jones' financial support and guidance. (Compl. 14). Jones also has served as a surrogate father to the son of a family friend, providing shelter and support until this young man could support himself. This young man will lose his father figure if Jones is deported. (Compl. 18).

Plaintiff is also a vital source of support to his elderly parents and mother-in-law, all U.S. citizens. His mother suffers from bone cancer and leukemia. (Compl. 15). Jones provides financial and emotional support and often her daily care. (Compl. 15). Jones' father is afflicted with Alzheimer's disease and Plaintiff's regular visits contribute to his father's and step-mother's mental and physical well-being. (Compl. 16). Jones also provides much-needed support to his mother-in-law, especially since her husband died. (Compl. 17). In fact, Plaintiff co-sponsors an annual event for several local communities, the "Holloway Family & Friends Appreciation Day," in part as a tribute to his late father-in-law. (Compl. 19).

In addition to supporting his family, Plaintiff has been gainfully employed and active in the community since his 1987 release. He has worked as an electrician for the same employer since 1998 and has always paid his taxes. (Compl. 9). In a letter in support of Plaintiff, his employer reports that "[a]n employee like Eddie is hard to come by." (AR 36). He also founded

the Millennium Music Makers, a steel drum band that performs in the community.  (Compl. 20).

It would be extremely difficult for the band to continue without Jones' support.  (Compl. 20).

Jones had no further problems with the law or his immigration status until returning from a family vacation in Jamaica shortly after September 11, 2001.  Upon his arrival to John F. Kennedy airport from Jamaica, Jones was denied formal admission to the country and detained by legacy-INS.[1]  (AR 321).  Legacy-INS charged Jones with being "inadmissible" to the United States under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because his 1981 criminal conviction constituted Crimes Involving Moral Turpitude.  (AR 670-2).  Jones was later paroled into the United States.  (AR 642-49, 703).

Admitting the charges against him, Jones moved to have his removal proceedings terminated to allow him to seek naturalization.[2]  (AR 528-30).  Jones was unable to seek naturalization during his removal proceedings because immigration courts do not have jurisdiction over naturalization determinations, 8 U.S.C. § 1421(a), and USCIS cannot consider the naturalization application of an alien in removal proceedings.  8 U.S.C. § 1429.  The immigration judge could only terminate Jones' removal proceedings to permit adjudication of a pending naturalization application if Jones "established *prima facie* eligibility for naturalization" and showed "exceptionally appealing or humanitarian factors" were present in his case.  8 C.F.R.

---

[1]  With the establishment of the Department of Homeland Security, legacy-INS was divided into separate pieces and sections of legacy-INS were placed, for the most part, under either the Department of Homeland Security or the United States Department of Justice.

[2]  In addition to asking the immigration judge to terminate his removal proceedings,  in April of 2002, Jones twice requested that legacy-INS exercise prosecutorial discretion to enable him to seek naturalization.  (AR 521, 502).  First, legacy-INS and later, USCIS denied these requests.  (AR 517, 100).  Jones also sought from the immigration judge and was granted a continuance of his removal proceedings to seek post-conviction relief for this criminal convictions.  (AR 245-52).  Jones' efforts to vacate his convictions were unsuccessful.  (AR 468-501, 428-32).

§ 1292.2(f). Jones acknowledges that his only form of relief from removal is to naturalize. (AR 261-262).

Despite the opposition of USICE,[3] the immigration judge terminated removal proceedings against Jones on December 19, 2003, to enable him to seek naturalization. (AR 399-404). The immigration judge determined that he had authority to terminate removal proceedings regardless of whether Jones was removable or inadmissible, that Jones had established *prima facie* eligibility for naturalization, and that exceptionally appealing and humanitarian factors were present. (AR 399-404).

DHS appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA").[4] While the BIA appeal was pending, Jones applied for naturalization, (AR 330-83), and USCIS denied his application for procedural reasons.[5] (AR 198-200). On January 7, 2005, the BIA vacated the immigration judge's decision and remanded the case to the immigration

---

[3] With the establishment of the Department of Homeland Security, legacy-INS was divided into separate offices. USICE's duties include trying aliens in immigration court. USICE opposed terminating Jones' removal proceedings, arguing that: (1) Jones was not *prima facie* eligible for naturalization because he was not "lawfully admitted" into the country, but rather paroled into the U.S.; (2) neither USCIS nor a court had provided an affirmative declaration that Jones was *prima facie* eligible for naturalization, as required by *In re Cruz*, 15 I&N Dec. 236 (BIA 1975), prior to terminating removal proceedings; (3) neither the immigration court nor the Board of Immigration Appeals constitutes a "court" for purposes of the *prima facie* determination since neither has jurisdiction over naturalization; (4) U.S. district courts do not have jurisdiction to make a determination of *prima facie* eligibility subsequent to The Immigration Act of 1990, PL 101-649, 1990; and (5) "exceptionally appealing or humanitarian factors," required to terminate Jones' proceedings under 8 C.F.R. § 1239.2(f), were not present in this case.

[4] DHS reiterated the arguments it had raised to the immigration judge and argued that the immigration judge made three errors of law by: (1) determining that Jones was *prima facie* eligible for naturalization; (2) terminating removal proceedings without an affirmative determination of *prima facie* eligibility from USCIS or a court; and (3) finding that Jones' case involved especially appealing or humanitarian factors. (AR 386-92). Jones moved for summary affirmance, arguing that the immigration judge's decision was proper and, in the alternative, any errors were harmless and immaterial. (AR 214-5).

[5] Although the immigration judge had ruled to terminate proceedings, USCIS found that the ruling was pending during the duration of the BIA appeal, and 8 U.S.C. § 1429 barred USCIS from granting naturalization to an alien in removal proceedings. (AR 198-200).

judge to consider other forms of relief available to Jones, finding that the immigration judge had erroneously terminated proceedings. (AR 192-3: *In re Jones*, 2005 WL 649121 (BIA 2005)). The BIA relied upon its prior decision in *In re Cruz*, 15 I&N Dec.236 (BIA 1975), which held that an alien can establish *prima facie* eligibility only by "an affirmative communication from the Service or by a declaration of a court that the alien would be eligible for naturalization but for the pendency of the deportation proceedings." *Id.* at 237.

At this point, Jones was faced with a conundrum. An immigration judge had sought to terminate removal proceedings so that an ultimate determination could be made with respect to his eligibility for naturalization, in light of humanitarian factors. That judge has been reversed, with the matter once again pending before him. The pendency of the action precluded further proceedings addressing Jones' naturalization application. Following the BIA's decision, Jones requested that Defendant Caterisano provide a written declaration that Jones was *prima facie* eligible for naturalization, (AR 189), however Defendant denied Jones' request because, having already denied his application for naturalization, there was no pending naturalization application upon which to make a *prima facie* determination. (AR 188). On March 24, 2005, Jones again requested the written declaration, citing *In re Cruz* as authority that this declaration was required for terminating proceedings against him. (AR 186).

On March 30, 2005, the day of Jones' next Master Calendar Hearing in front of the immigration judge, Jones filed a Complaint with this Court, seeking, among other relief, a mandamus to force Defendants to issue a statement finding him *prima facie* eligible for naturalization. That same day, this Court held an emergency hearing in which the parties agreed to attempt to resolve the matter, and the government agreed that Jones would not be taken into

custody at his hearing at the immigration court.

Jones then filed a new application for naturalization (AR 112-121) and on June 9, 2005, Defendant Caterisano's office issued a written statement finding that Jones was not *prima facie* eligible for naturalization because he had not established "good moral character," the requisite physical presence, or a bona fide marriage to his U.S. citizenship wife. (AR 96-9). Jones submitted a response to USCIS's written statement, along with supporting evidence, and asked USCIS to reconsider its June 9th determination. (AR 3-95). USCIS replied on July 21, 2005, stating that Jones' additional evidence had not established eligibility. (AR 1-2).

On August 5, 2005, Defendants moved for dismissal or summary judgment in the alternative, on the grounds that this Court does not have jurisdiction over Jones' claim and that those issues are now moot in light of Defendant Caterisano's determination that Jones is not *prima facie* eligible for naturalization.

Jones responded to Defendants' Motion to Dismiss, arguing that this Court has jurisdiction under a number of federal statutes, and that the issue is not moot because, by looking beyond the statutory period for purposes of establishing good moral character, USCIS made a final determination on Jones' naturalization claim rather than a *prima facie* determination.

II    Standard of Review

Defendants' Motion seeks dismissal of this action based on Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56. First, Defendants contend that portions of plaintiff's complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As the legal sufficiency of the complaint is challenged under a Rule 12(b)(6) motion, the court assumes "the truth of all facts

alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). A Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001). In reviewing the complaint, the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

If a district court considers materials outside the pleading in analyzing a Rule 12(b)(6) motion, the motion must be treated as one for summary judgment. *See Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)**.** Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court explained that only "facts that might affect the outcome of the suit under the governing law" are *material*. *Anderson*, 477 U.S. at 248. Moreover, a dispute over a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Second, Defendants contend that this Court does not have jurisdiction to provide a portion of the relief sought by Jones. When a defendant contends that the jurisdictional allegations of the complaint do not support the court's jurisdiction over the case, "[a] trial court may then go beyond the allegations of the complaint." *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982). In such cases, the court may "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Furthermore, "[u]nlike the procedure in a Rule 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder, the court in a Rule 12(b)(1) hearing weighs the evidence to determine its jurisdiction." *Adams,* 697 F.2d at 1219. Ultimately, the plaintiff bears the burden of proving subject matter jurisdiction. *See Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d at 768 (citing *Adams,* 697 F.2d at 1219); *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

III     Discussion

As previously mentioned, Jones primarily is seeking two forms of relief from this Court. First, he seeks an order requiring Defendants to make an affirmative communication on Jones' *prima facie* eligibility for naturalization. Second, he requests an order from this Court entering a declaratory judgment that Jones is *prima facie* eligible for naturalization, but for the pendency of the removal proceedings. The Court will address each request in turn.

A.  Jones' Request for an Order from this Court Requiring Defendants to Make an Affirmative Communication on his *Prima Facie* Eligibility for Naturalization

The nature of Jones' action is one for mandamus. While Defendants do not appear to be directly contending that this Court lacks jurisdiction to provide a writ of mandamus, pursuant to 28 U.S.C. § 1361, Defendants assert that mandamus is not appropriate because the relief requested has already been provided by USCIS. This Court has jurisdiction to determine whether mandamus is an appropriate remedy. *See Piledrivers' Local Union No. 2375 v. Smith*, 695 F.2d 390, 392 (9th Cir. 1982). Furthermore, this Court may rely upon 28 U.S.C. § 1331 to examine this immigration issue, which is governed exclusively by federal law.[6]

Pursuant to 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." A federal court may invoke a writ of mandamus when three elements exist: (1) the petitioner has shown a clear right to the relief sought; (2) the respondent has a clear duty to do the particular act requested by the petitioner; and (3) no other adequate remedy is available. *In re First Federal Sav. and Loan Ass'n of Durham*, 860 F.2d 135, 138 (4th Cir. 1988) (citing *Green v. Heckler,* 742 F.2d 237, 241 (5th Cir.1984); *Jones v. Alexander,* 609 F.2d 778, 781 (5th Cir.), *cert. denied,* 449 U.S. 832 (1980)). In short, "[m]andamus is not favored except in extraordinary situations." *In re First Federal Sav. and Loan Ass'n of Durham*, 860 F.2d at 138 (internal citations omitted). As previously

---

[6] Although the INA explicitly provides for judicial review of naturalization denials, *see* 8 U.S.C. § 1421(c); *Ngwana v. Attorney General of United States*, 40 F. Supp. 2d 319, 321 (D. Md. 1999), the parties have not addressed whether a denial of a *prima facie* determination of eligibility for naturalization, specifically in this case, constitutes a *de facto* denial of naturalization sufficient to implicate § 1421(c). In fact, the parties have not cited any statutory reference specifically addressing "*prima facie*" naturalization determinations. Nonetheless, 28 U.S.C. § 1331 provides jurisdiction for this Court to examine this issue arising under the INA.

11

noted, Jones' is in a quandary. A resident of the United States since 1969, Jones will be deported from this country unless USCIS enables the immigration judge to terminate removal proceedings. Without removal proceedings being terminated, USCIS cannot fully consider Jones' naturalization application. It is difficult for this Court to conceive of any other adequate remedy available to Jones at this stage in the process.[7]

Defendants essentially argue that Jones' requested relief is moot because USCIS provided a written statement finding that Jones was not *prima facie* eligible for naturalization because he had not established "good moral character," the requisite physical presence, or a bona fide marriage to his U.S. citizenship wife. (AR 96-9). Defendants provide no citation to any statute outlining the criteria specifically for such a "*prima facie*" determination, nor do they explain the process employed for making this type of naturalization determination. Jones argues that, instead of making a *prima facie* determination in June 2005, USCIS essentially skipped this step, looked outside the permissible time period, and impermissibly made a determination on the merits of his naturalization request.

The Attorney General is prohibited from considering a "petition for naturalization" while removal proceedings are pending against an alien. 8 U.S.C. § 1429; *Ngwana v. Attorney General of United States*, 40 F. Supp. 2d 319, 322 (D. Md. 1999). Furthermore, to the extent that USCIS impermissibly considered the full merits of Jones' naturalization, it failed to follow processes utilized for an on-the-merits determination, such as interviewing Jones and allowing him to present additional evidence and witnesses. Based on USCIS' determinations thus far, the

---

[7] Courts have previously found that mandamus relief was appropriate to compel agency action in immigration cases. *See generally Yu v. Brown*, 36 F. Supp. 2d 922, 932 (D.N.M. 1999); *Nadler v. INS*, 737 F. Supp. 658 (D.D.C. 1989).

immigration judge has not been permitted to stop removal proceedings, which have been placed on hold pending a resolution by this Court. As previously noted, the termination of removal proceedings is the only way that USCIS can permissibly consider Jones' petition for naturalization.

Complicating this analysis is the fact that certain actions have occurred at the administrative level *after* the initial Complaint was filed in this action in March 2005. As a result, it is necessary for the Court to look outside the pleadings to the administrative record in this case to examine what type of inquiry and determination was made by USCIS in June of 2005. Therefore, this portion of Defendants' Motion will be treated as one for summary judgment. *See Gay*, 761 F.2d at 177.

In 1990, Congress removed naturalization from the United States Courts and vested the Attorney General with the "sole authority to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a); *Ngwana*, 40 F. Supp. 2d at 322 (providing a "brief history" of immigration law). Section 316 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1427, states:

> (a) No person, except as otherwise provided in this title, shall be naturalized, unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his application has been physically present therein for periods totaling at least half of that time, and who has resided within the State or within the district of the Service in the United States in which the applicant filed the application for at least three months, (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

Section 319(a) of the INA, codified at 8 U.S.C. § 1430, shortens the five-year period to three years for lawful permanent residents, such as Jones, who are seeking naturalization based on their marriage to a United States citizen. Section 319(a) states:

> Any person whose spouse is a citizen of the United States, or any person who obtained status as a lawful permanent resident by reason of his or her status as a spouse or child of a United States citizen who battered him or her or subjected him or her to extreme cruelty, may be naturalized upon compliance with all the requirements of this title except the provisions of paragraph (1) of section 316(a) if such person immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least three years, and during the three years immediately preceding the date of filing his application has been living in marital union with the citizen spouse (except in the case of a person who has been battered or subjected to extreme cruelty by a United States citizen spouse or parent), who has been a United States citizen during all of such period, and has been physically present in the United States for periods totaling at least half of that time and has resided within the State or the district of the Service in the United States in which the applicant filed his application for at least three months.

Jones argues that USCIS' decision to look over 20 years back to Jones' 1981 rape conviction to determine whether he met the requisite good moral character for a *prima facie* naturalization determination was impermissible.[8] Jones asserts that USCIS is limited to examining only a three-year period to assess Jones' character for a *prima facie* determination.

---

[8] As noted *supra* in the "Background" section, USCIS' June 9, 2005 written statement also found that Jones was not *prima facie* eligible for naturalization because he had not established the requisite physical presence or a *bona fide* marriage to his U.S. citizenship wife. (AR 96-9). Since USCIS had, and presumable still has, Jones' passport and records relating to his entry to and exit from this country, any information needed to clarify the amount of time Jones spent out of the county presumably is at USCIS' disposal. *See* INA sec. 318, codified at 8 U.S.C. § 1429 (discussing entitlement of applicant to the production of documents and records by the Service concerning the applicants entry into the county). Further, Jones has submitted to USCIS extensive documentation of his *bona fide* marriage to his wife. This evidence includes the Jones' marriage certificate, the birth certificate for their child, a five-page letter from Mrs. Jones asking USCIS to exercise prosecutorial discretion in her husband's case, evidence that they have the same mailing address, and personal statements in support of Plaintiff from Mrs. Jones' oldest daughter and mother, among other evidence. (AR 17-21, 23, 27-30). Since Jones has not yet sought review of USCIS' denial pursuant 8 U.S.C. § 1421(c), the Court will not delve into the merits of these issues at this time. It is arguable, based on the specific facts of this case, that USCIS's determination is a *de facto* denial of naturalization reviewable by this Court pursuant 8 U.S.C. § 1421(c). This Court, however, awaits consideration of this issue in the event such review is sought by Jones in the form of an amended complaint.

Jones contends that looking beyond this period essentially skips the *prima facie* determination and converts the determination to one on the merits. Section 316.10 of title 8 of the Code of Federal Regulations, discussing "good moral character" explains:

> The Service is not limited to reviewing the applicant's conduct during the five years immediately preceding the filing of the application, but may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to that period, if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character.

8 C.F.R. § 316.10(a)(2).

As previously noted, *see supra* note 5, the applicable provisions do not outline the level of review required, nor the precise factors to be considered for a *"prima facie"* naturalization determination.[9] It is clear, however, that based on the procedural posture of this case, without such a determination, Jones almost certainly faces deportation. Although the term "*prima facie*" is not used, Section 318 of the INA notes that "the findings of the Attorney General in terminating removal proceedings or in canceling the removal of an alien pursuant to the provisions of this Act, shall not be deemed binding in any way upon the Attorney General with respect to the question of whether such person has established his eligibility for naturalization as required by this title." Based on the relevant statutory framework and specific facts of this case, this Court finds that it is necessary for USCIS to conduct a hearing, before an immigration officer, and take evidence, such as interviewing Jones and hearing the testimony of witnesses,

---

[9] The term *"prima facie"* eligibility for naturalization appears to have been established by the Board of Immigration Appeals in the 1975 decision *In re Cruz*, 15 I. & N. 236 (BIA 1975). *In re Cruz* was issued well prior to the changes that occurred in the immigrations laws in 1990, which divested district courts of the power to naturalize. *See generally De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042, 1047 (9th Cir. 2004) (calling into doubt whether *In re Cruz* remains "good law"); *Levy v. INS*, 6 Fed. Appx. 331, 332-33 (7th Cir. 2001) (discussing *In re Cruz*).

before making any type of naturalization determination in this case.  Defendants' Motion for Summary Judgment is denied.  This Court will issue an appropriate writ of mandamus.

      B.      <u>Jones' Request that for an Order from this Court Entering a Declaratory Judgment that he is *Prima Facie* Eligible for Naturalization</u>

As previously noted, in 1990, Congress removed naturalization from the United States Courts and vested the Attorney General with the "sole authority to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a); *Ngwana*, 40 F. Supp. 2d at 322.  Therefore, based on the complaint filed with this court and at this stage of the proceeding, this Court does not have jurisdiction to enter a declaratory judgment order finding Jones *prima facie* eligible for naturalization.  However, this Court does not preclude the *possibility* of future review pursuant to 8 U.S.C. § 1421(c) should Jones seek to file an amended complaint seeking such relief.

This Court has previously taken jurisdiction over a denial of naturalization under 8 U.S.C. § 1421(c), *see Ngwana*, 40 F. Supp. 2d at 321, and this statutory provision has also been invoked for judicial review of a USCIS *prima facie* naturalization determination.  *See Gatcliffe v. Reno*, 23 F. Supp. 2d 581 (D.Vi. 1998).  In *Ngwana*, the court determined that 8 U.S.C. § 1429, precluding the USCIS from considering a naturalization application while an alien was in removal proceedings, but removal proceedings did not bar the court from conducting a *de novo* review of a naturalization denial.  *See Ngwana*, 40 F. Supp. 2d at 321 (citing *Gatcliffe v. Reno*, 23 F. Supp. 2d at 582-583).  The court referred to *Gatcliffe v. Reno*, in which a district court found jurisdiction under 8 U.S.C. § 1421(c) to conduct a *de novo* review of an administrative *prima facie* naturalization determination.  *See id.*; *see also Gatcliffe v. Reno*, 23 F. Supp. 2d at 583.  The court in *Gatcliffe* determined that the plaintiff – who had three criminal convictions

more than five years prior to applying for naturalization and who since his incarceration had "become an integral part of the [] community" – was in fact eligible for naturalization, but for his removal proceedings. *Gatcliffe v. Reno*, 23 F. Supp. 2d at 583-585.

IV.   Conclusion

For the reasons stated above, Defendants' Motion to Dismiss for Lack of Jurisdiction or for Summary Judgment is DENIED.  A separate Order will follow.


Date:  January 31, 2006                                         /s/                                        
                                                            Richard D. Bennett
                                                            United States District Judge